## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW MEXICO

MICHAEL J. JONES and
TAMERA A. JONES,

       Plaintiffs,

v.                                          Civ. No. 2:25-472 MLG/GJF

PIONEER BANK, ADRIANN RAGSDALE,
DEE ANN NUNEZ, and
DOVENMUEHLE MORTGAGE, INC.,

       Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court on the Plaintiffs' Motion for Leave to File First Amended Complaint and Counterclaim ("Motion to Amend") (Dkt. No. 19), Defendants' Motion to Strike Plaintiffs' Second Amended Complaint ("Motion to Strike") (Dkt. No. 40), Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion to Dismiss") (Dkt. No. 39), Plaintiff's Second Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Second Motion for TRO") (Dkt. No. 41), and Defendants' Motion for Sanctions ("Motion for Sanctions") (Dkt. No. 53), which are all fully briefed. *See* Dkt. Nos. 19, 24, 39, 40–42, 45, 53, 63–64.

On January 7, 2026, the Court held an Omnibus Motions Hearing as to these motions and others. *See* Dkt. No. 77. For the reasons that follow, the Court **RECOMMENDS** that Plaintiffs' Motion to Amend be **GRANTED**, that Defendants' Motion to Dismiss and Motion to Strike be **GRANTED IN PART AND DENIED IN PART**, and that Plaintiff's Second Motion for TRO

---

[1] The undersigned files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's Order of Referral filed August 13, 2025. Dkt. No. 30.

and Defendants' Motion for Sanctions be **DENIED**.

## I.     BACKGROUND AND PROCEDURAL HISTORY

On May 20, 2025, Michael and Tamera Jones ("Plaintiffs") filed their initial Complaint in this federal case asserting a variety of state and federal causes of action, including a civil rights claim under 42 U.S.C. § 1983 and an extortion claim under 18 U.S.C. § 894, against Defendants Pioneer Bank, Adriann Ragsdale, and Dee Ann Nunez.[2] Dkt. No. 1. Concurrently with the filing of that complaint, Plaintiffs sought an emergency Temporary Restraining Order ("TRO") enjoining Defendants from proceeding with or enforcing any foreclosure sale and ordering Defendants not to seize or sell Plaintiffs' real property until full adjudication of the claims asserted in their initial Complaint. Dkt. No. 2. The Court denied the Motion for TRO and ordered Plaintiffs to show cause why it should not dismiss their claims for lack of jurisdiction. Dkt. No. 7. In that same Order, the Court ordered Plaintiffs to amend their complaint within 21 days. *Id*. at 4.

Two weeks later, on June 13, 2025, Plaintiffs filed their First Amended Complaint, adding Dovenmuehle Mortgage, Inc. as a defendant and amending their claims. Dkt. No. 10. Altogether, the First Amended Complaint asserts seven claims: Quiet Title, Declaratory Judgment, violations of the Truth in Lending Act ("TILA"), violations of the Real Estate Settlement Procedures Act ("RESPA"), violations of the Fair Debt Collection Practices Act ("FDCPA"), fraud and misrepresentation, and unjust enrichment. *Id*. A month after filing the First Amended Complaint, Plaintiffs filed a Motion to Amend in which they sought leave to file a First Amended Complaint and Counterclaim (Exhibit B)." Dkt. No. 19 at 3. A month later, before the Court could resolve Plaintiffs' Motion to Amend, Plaintiffs filed their Second Amended Complaint (Dkt. No. 37),

---

[2] As the Court noted in its May 27, 2025 Order to Show Cause, Defendant Ragsdale is an attorney for Pioneer Bank and Defendant Nunez is the senior vice president of the bank. Dkt. No. 7.

which asserts certain new facts and claims and reasserts some claims that were already contained in the First Amended Complaint. *Compare* Dkt. No. 10, *with* Dkt. No. 37.

Like the initial Complaint, both the First and Second Amended Complaints relate, at least in part, to a foreclosure action taking place in the Fifth Judicial District Court in Chaves County. *See* Dkt. Nos. 1, 10, 37. In that state court action, Pioneer Bank sought to foreclose on a mortgage lien for property owned by Plaintiffs at 1315 Sorrento Drive, Roswell, New Mexico.[3] *See Pioneer Bank v. Jones*, D-504-CV-202400959. State court records show that, on April 16, 2025, the judge presiding over the foreclosure action, Judge Kallunki, entered summary judgment in favor of Pioneer Bank and against Plaintiffs, appointing a Special Master to sell the property. *Pioneer Bank*, D-504-CV-202400959, Order for Summary Judgment (Apr. 16, 2025).

The next month, just before the foreclosure sale was to take place, Mr. and Mrs. Jones filed a Notice of Removal to Federal Court in the state foreclosure case, despite having also filed that same week a *separate* complaint commencing the instant action in federal court. *Compare Pioneer Bank*, D-504-CV-202400959, Notice of Removal to Federal Court (May 27, 2025), *with* Dkt. No. 1. Plaintiff's Notice of Removal notwithstanding, Pioneer Bank continued to prosecute the foreclosure action in state court, filing an August 27, 2025 Motion for Order Approving Foreclosure Sale and Special Master's Report that asks Judge Kallunki to approve the May 30, 2025 sale of 1315 Sorrento Drive and to deem invalid Plaintiffs' Notice of Removal. *Pioneer Bank*, D-504-CV-202400959, Motion for Order Approving Foreclosure Sale (Aug. 27, 2025). Recently, at a December 15, 2025 hearing, Judge Kallunki explained that he was "unable to grant relief until [the] fed[eral] court makes a ruling." *Pioneer Bank*, D-504-CV-202400959, Minutes

---

[3] The Court takes judicial notice of the state court's records in the underlying foreclosure action, *Pioneer Bank v. Jones*, D-504-CV-202400959. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.")

from Court Proceeding (Dec. 26, 2025).

## II.    PLAINTIFFS' MOTION TO AMEND AND DEFENDANTS' MOTION TO STRIKE

At the outset, the Court must address which version of the Complaint—as between the First Amended Complaint (Dkt. No. 10) and the Second Amended Complaint (Dkt. No. 37)—is the operative one. In making this determination, the Court must resolve both Plaintiffs' Motion to Amend (Dkt. No. 19) and Defendants' Motion to Strike (Dkt. No. 40).

### A.  Legal Standard

When the time for amending a pleading as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). A court should "freely give leave" to amend a pleading where "justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, Rule 15(a)(2) aims to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)). But if the movant fails to satisfy Rule 15(a)'s "justice so requires" standard, the district court does not abuse its discretion in denying a motion to amend. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 990 (10th Cir. 2019) (citation omitted).

In considering the Motion to Amend and Motion to Strike, as well as each motion addressed herein, the Court bears in mind that "pro se litigant[s'] pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted). In *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), the Tenth Circuit stated:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal

theories, his poor syntax, and sentence construction, or his unfamiliarity with pleading requirements.

*Id.* Even so, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or to construct a legal theory on a plaintiff's behalf." *Id.*

### B.   Analysis

The filing of Plaintiffs' First Amended Complaint on June 13, 2025, followed on the heels of the Court's May 27, 2025 Order directing them to amend. *Compare* Dkt. No. 7 at 4, *with* Dkt. No. 10. But in addition to amending at the Court's behest and with its authorization, Plaintiffs *also* filed a Motion to Amend in which they sought leave to file their "First Amended Complaint and Counterclaim (Exhibit B)." Dkt. No. 19 at 3. Despite their reference to "Exhibit B," and despite Local Rule 15.1's requirement that "[a] proposed amendment to a pleading . . . accompany the motion to amend," Plaintiffs failed to attach to their Motion a proposed amended complaint, as Exhibit B or otherwise. *Id.* As a result, the only amended complaint available for the Court's consideration when Plaintiffs moved to amend was the First Amended Complaint that Plaintiffs had *already filed* on June 13, 2025. Confusing matters further, before the Court resolved Plaintiffs' Motion to Amend, Plaintiffs filed a Second Amended Complaint (Dkt. No. 37) without an accompanying motion and without obtaining Defendants' consent or leave of Court. *See* Dkt. Nos. 37, 40. Plaintiffs' Second Amended Complaint, which came more than a month after their Motion to Amend, asserts new facts and claims and reasserts others that were already contained in the First Amended Complaint. *Compare* Dkt. No. 10, *with* Dkt. No. 37.

Despite the filing of the Second Amended Complaint, Defendants construe Plaintiffs' Motion to Amend to seek retroactive leave for the filing of their First Amended Complaint. *See* Dkt. No. 24. Acknowledging that the Court had already authorized Plaintiffs to amend, Defendants explained that they "ha[d] no reason to oppose or object to Plaintiffs' June 13, 2025 filing of their

First Amended Complaint." *Id.* at 1. To the extent Plaintiffs' Motion to Amend seeks to *further* amend their complaint, however, Defendants reserve the right to oppose such an amendment. *Id.*

Like Defendants, the Court construes Plaintiffs' Motion to Amend as a retroactive, albeit unnecessary, request for leave to file the First Amended Complaint, which Plaintiffs had in fact already filed a month earlier. Because Defendants do not oppose the filing of the First Amended Complaint, and because the presiding judge authorized its filing, the Court **RECOMMENDS** that Plaintiffs' Motion to Amend be **GRANTED**.

Plaintiffs' filing of the Second Amended Complaint, on the other hand, was *not* authorized by order of the Court or by the applicable rules. Federal Rule of Civil Procedure 15(a) is quite clear as to the preconditions for amending a complaint after the time for amending once as a matter of course has expired, which occurred here when Plaintiffs filed their First Amended Complaint. That is, pursuant to Rule 15(a), Plaintiffs were only permitted to further amend their complaint (after the filing of their First Amended Complaint) if they obtained either leave of Court or Defendants' consent. *See* Fed. R. Civ. P. 15(a). Although Rule 15(a)(2) provides that a court should freely give leave to amend when justice requires, this does not obviate an amending party's obligation to procure either the Court's permission or the opposing party's consent. *See Matthews v. LaBarge, Inc.*, 407 F. App'x 277, 280 (10th Cir. 2011).

Notably, Defendants' Motion to Strike pointed Plaintiffs to the applicable procedural rule and recited its requirements. Dkt. No. 40 at 1. Even so, Plaintiffs offered no explanation for their failure to satisfy Rule 15(a)'s requirements. In fact, they did not respond to Defendants' Motion to Strike at all. Under Local Rule 7.1(b), Plaintiffs' failure to respond constitutes consent to grant the Motion to Strike. Moreover, when the Court asked Plaintiffs at the Omnibus Motions Hearing why their unauthorized Second Amended Complaint should be permitted, Plaintiffs offered only the

following responses: (1) they were not familiar with the relevant procedural rules, and (2) they filed the amended pleading "in good faith."[4] *See* Dkt. No. 77 at 4. But Plaintiffs' *pro se* status does not relieve them of the obligation to familiarize themselves with and to comply with the applicable rules of procedure. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

Because Plaintiffs failed to comply with the dictates of Rule 15(a) when filing their Second Amended Complaint or to respond to Defendants' Motion to Strike, which identified those deficiencies, the Court concludes that striking the Second Amended Complaint is the proper course. *See Matthews*, 407 F. App'x at 280 (determining that the district court did not abuse its discretion when it struck a third amended complaint for failure to comply with Rule 15(a)(2), where the defendant highlighted the rule's requirements in its motion to strike but the plaintiff failed to explain why he failed to satisfy those requirements). In addition, the Court observes that many of the filings that followed Plaintiff's Second Amended Complaint appear to track the claims in Plaintiffs' First Amended Complaint, such that it would complicate resolution of the matters before the Court were it to instead consider the Second Amended Complaint to be the operative one. Notably, any confusion as to the operative complaint was of Plaintiffs' making.

To the extent Defendants seek an award of attorneys' fees for bringing Plaintiffs' procedural violation to the Court's attention, the Court concludes that such an award is not warranted given the seeming inadvertence of the violation and the Court's clear warning at the Omnibus Motions Hearing that it will be less willing to overlook procedural violations by Plaintiffs going forward. *See* Dkt. No. 77 at 6.

---

[4] Having been advised by the Court of their obligations under Rule 15(a) in particular, Plaintiffs indicated that, should the Court strike their unauthorized Second Amended Complaint, they will seek to amend their First Amended Complaint by following the procedures outlined in that rule. Dkt. No. 77 at 4.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Strike be **GRANTED IN PART AND DENIED IN PART**, that the Plaintiffs' Second Amended Complaint be **STRICKEN**, that Plaintiffs' First Amended Complaint be treated as the operative complaint, and that Defendants' request for an award of attorneys' fees be **DENIED**. Should Plaintiffs seek to further amend their First Amended Complaint, as they indicated at the Omnibus Motions Hearing they do, they must do so in compliance with Rule 15(a).

## III.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURSDICTION

In their Motion to Dismiss, Defendants ask the Court to dismiss all seven counts of Plaintiffs' First Amended Complaint for lack of jurisdiction. Dkt. No. 39. More specifically, they contend that the *Rooker-Feldman* doctrine deprives the Court of jurisdiction (*id*.) or, alternatively, that Counts I-III are barred by the *Younger* abstention doctrine (*id*. at 4 n.1). Because both the *Rooker-Feldman* and *Younger* doctrines are jurisdictional, determining whether they apply is a threshold inquiry that must precede any merits-based determination. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 100 n.3 (1998); *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004).

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(1) allows a party to raise by motion the defense of the court's "lack of jurisdiction over subject matter." Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### B. Analysis

In federal actions related to state court foreclosures proceedings, there are, "[d]epending upon the vantage point and the stage in the foreclosure process, . . . potentially two applicable doctrines of abstention, *Rooker-Feldman* and *Younger*, both of which allow a federal district court to defer to the state adjudicative process." *Beeler Props., LLC v. Lowe Enter. Residential Invs., LLC*, No. 07-cv-00149-MSK-MJW, 2007 WL 1346591, at *2 (D. Colo. May 7, 2007).

The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Velasquez v. Utah*, 775 F. App'x. 420, 422 (10th Cir. 2019) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Put another way, "*Rooker-Feldman* is a jurisdictional prohibition on lower federal courts exercising appellate jurisdiction over state-court judgments." *Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012). The *Rooker-Feldman* doctrine not only prohibits direct review of state court judgments by lower federal courts, it also prohibits federal courts from issuing declaratory relief that is "inextricably intertwined with a prior state-court judgment." *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006) (citation omitted). "A claim is inextricably intertwined if 'the state-court judgment *caused*, actually and proximately, the injury for which the federal-court plaintiff seeks redress.'" *Id.* (quotation omitted).

In *Campbell v. City of Spencer*, the Tenth Circuit explored the nuances of the *Rooker-Feldman*, making distinctions between cases where it prohibits jurisdiction and those where it does not. *See* 682 F.3d at 1281. For instance, the court reasoned that "[w]hen the state-court judgment is not itself at issue, the [*Rooker-Feldman*] doctrine does not prohibit federal suits regarding the

same subject matter, or even the same claims, as those presented in the state-court action." *Id*. As the Tenth Circuit explained, "the essential point is that barred claims are those complaining of injuries caused by state-court judgments," and "an element of the claim must be that the state court wrongfully entered its judgment." *Id*. at 1283.

In the same vein, *Younger* abstention bars federal courts from interfering with state proceedings when the relief sought "could adequately be sought before the state court." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). In determining whether *Younger* abstention is appropriate, the Court considers whether:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (quotation omitted). Notably, *Younger* abstention is mandatory, and the Court *must* abstain if the three conditions are satisfied. *Id*.

Here, Defendants contend that Counts I and II of Plaintiffs' First Amended Complaint, for quieting title and for declaratory judgment, *directly* seek to disturb the state foreclosure summary judgment against Plaintiffs and are therefore barred by the *Rooker-Feldman* doctrine. Dkt. No. 39 at 2. In Count I, Plaintiffs allege that Defendants "have no valid or lawful claim" to 1315 Sorrento Drive, and they ask the Court to quiet title. Dkt. No. 10 at 3. In Count II, they seek a declaration that (1) the "mortgage and note were separated"; (2) "[n]o Defendants possess[] enforceable rights"; and (3) "[t]he title is vested solely in Plaintiff[s] free of encumbrance." *Id*. Insofar as Defendants suggest that Counts I and II constitute challenges to the state court's Order for Summary Judgment, the Court agrees. Yet, as the Court indicated at the Omnibus Motions

Hearing, the posture of the ongoing state court foreclosure action—with Judge Kallunki having not yet approved the foreclosure sale or issued a final judgment—has given the Court some pause. *See* Doc. 77 at 5.

Generally, state court orders are sufficiently final to implicate the *Rooker-Feldman* doctrine when they "completely determine the rights of the parties" to the state court proceeding. *See Beeler Props., LLC*, 2007 WL 1346591, at *3 (citing *Mann v. Boatright*, 477 F.3d 1140 (10th Cir. 2007)). Under New Mexico law, there are generally two final, appealable orders in foreclosure actions: the foreclosure decree and the order confirming sale. *See Speckner v. Riebold*, 523 P.2d 10, 12 (N.M. 1974); *Dibble v. Wells Fargo Bank Nat'l Assoc.*, 226 F. Supp. 3d 1226, 1231 (D.N.M. 2016). And most importantly for present purposes, a foreclosure decree "operates to foreclose the mortgage [and] declare[] the rights of the parties in the mortgaged premises." *Speckner,* 523 P.2d at 12; *Dibble*, 226 F. Supp. 3d at 1231.

To be sure, Judge Kallunki's Order for Summary Judgment declared the rights of the parties in 1315 Sorrento Drive by foreclosing the mortgage on that property and awarding judgment in favor of Pioneer Bank and against Mr. and Mrs. Jones. *See Pioneer Bank*, D-504-CV-202400959, Order for Summary Judgment (Apr. 16, 2025). The foreclosure sale then took place, but, to date, Judge Kallunki has not approved that sale and has in fact indicated his reluctance to do so while this federal action remains pending. *See Pioneer Bank*, D-504-CV-202400959, Minutes from Court Proceeding (Dec. 26, 2025). Nevertheless, because Judge Kallunki's Order for Summary Judgment "operate[d] to foreclose the mortgage [and] declare[] the rights of the parties in the mortgaged premises," the Court is satisfied that the order was sufficiently final to implicate the *Rooker-Feldman* doctrine despite ongoing activity in the state foreclosure action and the absence of any order *approving* the foreclosure sale. *See Dibble*, 226 F. Supp. 3d at 1231 (concluding that, although there were outstanding legal issues in the state

foreclosure action, to include a writ of assistance, the foreclosure judgment was sufficiently final to apply the *Rooker-Feldman* doctrine to the plaintiffs' declaratory judgment and injunctive claims). In the Court's view, Counts I and II fall squarely within the *Rooker-Feldman* doctrine, depriving the Court of jurisdiction over those claims, and those claims should be dismissed.

Even if the Court were mistaken as to whether there is sufficient finality in the foreclosure action to apply *Rooker-Feldman* to Counts I and II, the *Younger* doctrine would lead the Court to the same conclusion. Indeed, all three criteria of the *Younger* doctrine are satisfied with respect to Counts I and II: (1) there is an ongoing judicial proceeding in state district court concerning the foreclosure at issue in these counts, (2) the foreclosure proceeding implicates important state interests, and (3) Plaintiffs had the opportunity to assert their claims that Defendants lack enforceable legal rights to foreclose on their home in the state foreclosure action. *See Barefoot v. Onewest Bank, FBW*, No. 11-038 JB/LFG, 2011 WL 13291132, *2–3 (D.N.M. Jan. 18, 2011). Thus, even if there was not yet a final determination of the rights of the parties in the foreclosure action, which the Court finds that there was, the Court must abstain and dismiss Counts I and II under the *Younger* doctrine.

As to the remaining counts in Plaintiffs' First Amended Complaint, Defendants contend that they "attack Defendants' conduct in issuing, maintaining, and foreclosing on the mortgage on the subject property." Dkt. No. 39 at 4. In Defendants' view, these claims "constitute nothing more than a request for the review and rejection of state court proceedings, . . . [and] are [therefore] barred by the *Rooker-Feldman* doctrine." *Id*. *Rooker-Feldman*'s application to these claims is not as straightforward as Defendants suggest, however.

Critically, certain of Plaintiffs' claims seek statutory damages for alleged violations of the law that, when construed in Plaintiffs' favor for purposes of the Motion to Dismiss, could be characterized as distinct from and not attempting to challenge the underlying foreclosure judgment.

Specifically, in Count III, Plaintiffs seek statutory damages for Defendants' "fail[ure] to provide material disclosures (APRs, fees, rights to rescind) and include[ing] inaccurate riders." Dkt. No. 10 at 3. Similarly, in Count IV, Plaintiffs seek statutory damages under RESPA for Defendants' "fail[ure] to respond to Qualified Written Requests" and for failing to provide "servicing disclosure or transfer documentation." *Id.* at 4. Numerous courts have held that the *Rooker-Feldman* doctrine does not bar claims for statutory damages under TILA.[5] *See, e.g.*, *Dibble v. Wells Fargo Bank*, No. CIV 15-1167 JB/KBM, 2016 WL 7507600 (D.N.M. Aug. 10, 2016) (reasoning that "[b]ecause an award of statutory damages under TILA would not undo the state-court judgment in the foreclosure action, [that] claim [was] not barred by the *Rooker-Feldman* doctrine*"*), *Proposed Findings and Recommended Disposition adopted,* 226 F. Supp. 3d 1226 (D.N.M. Dec. 27, 2016) (citation omitted); *Ceccarelli v. Morgan Stanley Private Bank, N.A.,* No. 25-443-cv, 2025 WL 2992528, at *2 (2d Cir. Oct. 24, 2025) (explaining that "the district court also properly recognized [that] the Ceccarellis' claim for damages under TILA was not barred by *Rooker-Feldman*"); *Kraft v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 10-cv-00815-REB-BNB, 2010 WL 4869099, at *4 (D. Colo. Nov. 23 2010) (reasoning that claims for statutory damages under TILA are not barred under *Rooker-Feldman* because they do not seek to undo state court foreclosure proceedings). By analogy, the same is true of Plaintiffs' claims for statutory RESPA damages, which also do not directly challenge the state court foreclosure judgment. *See Kraft*, 2010 WL 4869099, at *4 ("[A]ny claims for statutory damages under the TILA and other statutes[, including RESPA,] are not foreclosed, as they do not in any way seek to undo or even impact the state court proceeding involving the foreclosure.").

---

[5] In addition to seeking statutory damages under TILA, Plaintiffs also seek "[r]escission of the loan based on TILA violations." Dkt. No. at 4. Because the Court's analysis of whether the *Rooker-Feldman* doctrine applies to Plaintiffs' TILA rescission claim is distinct from its analysis of Plaintiffs' statutory damages claims, that analysis follows separately below.

In support of their position that *all* of Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, Defendants liken those claims to the ones at issue in *Williams v. HSBC Bank USA, N.A.*, 681 F. App'x 693 (10th Cir. 2017). There, the Williamses sued the bank that pursued foreclosure against them in state court, and the Tenth Circuit determined that all of their claims asserted in federal court attacked the validity of the state court foreclosure judgment and were therefore barred by the *Rooker-Feldman* doctrine. *Id*. at 696. Although the Williamses sought "compensation" for their home if it could not be returned to them, the Tenth Circuit concluded their claims "still target[ed] harm allegedly caused by the state-court judgment" and their "compensation request rest[ed] on the premise that the foreclosure judgment [was] infirm because the defendants failed to proffer the original promissory note, failed to show standing, and violated the Universal Declaration of Human Rights and the [UCC]." *Id*. While Defendants suggested at the Omnibus Motions Hearing that the claims at issue in *Williams* were identical to those asserted by Plaintiffs here (*see* Dkt. No. 77 at 5), the Court is unconvinced.[6] Most notably, the Williamses did not seek statutory damages under TILA or RESPA and, thus, the Tenth Circuit did not have occasion to evaluate the application of *Rooker-Feldman* to such claims. *Williams* is therefore of no help to Defendants in the context of Counts III and IV.

The Court considers Count VI, Plaintiffs' fraud/misrepresentation claims, to be in a similar position as Counts III and IV. In Count VI, Plaintiffs allege that "Defendants included false disclosures and instruments designed to mislead the Plaintiff[s]" and, further, that the "'Second Home Rider' and other omissions constitute actionable fraud." Dkt. No. 10 at 4. Construed in Plaintiffs' favor, the Court cannot say that these fraud claims seek to undo the state court

---

[6] In contrast to Plaintiffs' claims here, the Williamses asserted claims for FOIA violations, Failure to Prove Standing, Failure to Bring Forth Original Promissory Note, Failure to Recognize or Respond to Notice of Land Patent, Failure to Recognize Notice of Cease and Desist, Violation of Human Rights, and Violation of the Homestead Act. *Williams*, 681 F. App'x at 695.

foreclosure action or stem from a contention that Defendants have no legal right to the foreclosed property, particularly where Plaintiffs specify that they seek "[c]ompensatory and punitive damages for fraud." *Id*. Notably, in *Williams*, the Tenth Circuit cited favorably a decision from the Second Circuit, *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423 (2d Cir. 2014), for the proposition that "[t]he *Rooker-Feldman* doctrine does *not* bar a *damages* claim based on a fraudulent foreclosure judgment." *Williams*, 681 F. App'x at 696 n.1 (emphasis added).

In *Vossbrinck*, in turn, the Second Circuit acknowledged that certain of the plaintiff's fraud claims[7] were barred by *Rooker-Feldman*. 681 F. App'x 693 at 427–28. The court determined that other fraud claims—specifically those that sought damages "for injuries [the plaintiff] suffered from [the defendants'] alleged fraud, the adjudication of which [did] not require the federal court to sit in review of the state court judgment"—were *not* barred by *Rooker Feldman*. *Id*; *see also Truong v. Bank of America, NA*, 717 F.3d 377 (5th Cir. 2013) (concluding that the plaintiff's claims that her mortgage lenders (1) misled the state court into thinking that evidence was authentic and (2) misled her into foregoing an opportunity to dispute authenticity in state court were "independent claims" that did not seek to overturn the state court judgment and were not subject to *Rooker-Feldman*).

Finding persuasive the rationale of the cases cited herein, and rejecting the general notion that *Williams* requires application of *Rooker-Feldman* to all of the claims in Plaintiffs' First Amended Complaint, the Court concludes that Counts III, IV, and VI do not implicate the *Rooker-Feldman* doctrine and that Defendants' Motion to Dismiss should therefore be denied as to these claims.

---

[7] In *Vossbrinck*, the court determined that the plaintiff's claims seeking title to foreclosed property on the ground that the foreclosure judgment was fraudulently obtained were barred by *Rooker-Feldman*. *See* 773 F.3d at 427.

The Court reaches the opposite conclusion with respect to Counts V and VII and as to Plaintiffs' rescission claim under TILA. In Count V, Plaintiffs allege that Defendants violated the FDCPA by "attempt[ing] to collect without validating the debt" and "[c]ontinuing [the] foreclosure [action] with unresolved disputes." Dkt. No. 10 at 4. And in Count VII, Plaintiffs allege that "Defendants unjustly accepted payments and pursued foreclosure without lawful authority," for which Plaintiffs seek restitution. *Id.* In the Court's view, both of these claims seek to negate the state court foreclosure judgment and are therefore barred by *Rooker-Feldman* doctrine. Similarly, Plaintiffs' claim for rescission under TILA is inextricably intertwined with the foreclosure judgment, as granting rescission of the subject mortgage would necessarily nullify the foreclosure judgment and is likewise barred by *Rooker-Feldman*.[8] *See Jacobowitz v. M & T Mortg. Corp.*, 372 F. App'x 225, 227–28 (3d Cir. 2010) (holding that that the *Rooker-Feldman* doctrine barred the plaintiff's TILA claims for rescission of the mortgage, given that a favorable judgment on rescission claims would necessarily negate the state court foreclosure judgment); *Podemski v. U.S. Bank Nat'l Assoc.*, 714 F. App'x 580, 581–82 (7th Cir. 2017) (same); *Parker v. Potter*, 368 F. App'x 945, 948 (11th Cir. 2010) (same).

---

[8] In reaching this conclusion, the Court acknowledges that a line of cases from the District of Colorado have held that the *Rooker-Feldman* doctrine only bars TILA rescission claims when the foreclosure sale has been finally approved in the state foreclosure proceeding, which has not occurred in the underlying foreclosure proceeding here. *See, e.g.*, *Brode v. Chase Home Finance, LLC*, No. 10-cv-00692-WYD-MJW, 2010 WL 2691693, at *6 (D. Colo. July 6, 2010); *Kraft*, 2010 WL 4869099, at *4. These cases suggest, however, that the District of Colorado has predicated *Rooker-Feldman* application on approval of a foreclosure sale as the result of a distinction in Colorado foreclosure law as it relates to finality. *See Brode*, 2010 WL 2691693, at *6 (exploring the nuances of Colorado foreclosure law and explaining that "approval of the Public Trustee's sale" is the "final step in the . . . foreclosure process . . . which leads to the state court judgment or equivalent thereof"). In contrast, under New Mexico law, the foreclosure decree, which comes before a separate order confirming sale, is itself a final, appealable order and one that finally "declares the rights of the parties in the mortgaged premises." *See Speckner*, 523 P.2d at 12; *Dibble*, 226 F. Supp. 3d at 1231. Given this understanding of finality in the context of New Mexico foreclosure law, the Court is not convinced that approval of the foreclosure sale is a necessary precondition to applying the *Rooker-Feldman* doctrine to TILA rescission claims. *See Podemski v. U.S. Bank Nat'l Assoc.*, 714 F. App'x 580, 581 (7th Cir. 2007) (concluding that the *Rooker-Feldman* doctrine barred the plaintiff's TILA rescission claim because "under Indiana law a foreclosure judgment is final, and the plaintiff's purported rescission could not be sustained without 'disregarding or effectively vacating' the state court's foreclosure judgment").

For all of these reasons, the Court **RECOMMENDS** that Defendants' Motion to Dismiss (Dkt. No. 39) be **GRANTED IN PART** as to Plaintiffs' claims for Quiet Title (Count I), Declaratory Judgment (Count II), rescission under TILA (Count III, in part), violations of FDCPA (Count V), and Unjust Enrichment (Count VII). Conversely, the Court **RECOMMENDS** that Defendants' Motion to Dismiss (Dkt. No. 39) be **DENIED IN PART** as to Plaintiffs' claims for statutory damages under both TILA (Count III, in part) and RESPA (Count IV) and as to Plaintiffs' claims for fraud and misrepresentation (Count VI).

## IV.    PLAINTIFFS' SECOND MOTION FOR TRO

Concurrently with their initial Complaint, Plaintiffs filed an Emergency Motion for TRO, which asked the Court to enjoin "Defendants and their agents from proceeding with or enforcing any foreclosure sale" of 1315 Sorrento Drive and ordering "no seizure or sale of Plaintiffs' property until full adjudication of this matter has occurred." Dkt. No. 2 at 2. Shortly after its filing, the presiding judge denied Plaintiffs' Motion on the basis that they had "failed to establish the jurisdictional prerequisites" for a TRO by making a "'clear and unequivocal' showing that they are entitled to preliminary injunctive relief." Dkt. No. 7 at 4 (citing *Colorado v. U.S. Env't Protect. Agency*, 989 F.3d 874, 883–84 (10th Cir. 2021)). The Court emphasized that Plaintiffs had not shown that the Court had jurisdiction over their claims, and therefore, had not shown entitlement to injunctive relief. *Id*.

On September 5, 2025, more than three months after the foreclosure sale had taken place and after Plaintiffs had filed their First Amended Complaint, Plaintiffs filed a Second Emergency Motion for TRO and Preliminary Injunction. *See* Dkt. Nos. 41, 42. Therein, Plaintiffs ask the court to "halt[] any foreclosure proceedings by Defendants against Plaintiffs' property located at 1315 Sorrento Drive." Dkt. No. 41 at 1.

### A.  Legal Standard

"The substantive requirements for a preliminary injunction and temporary restraining order are identical." *See Valley Cmty. Preservation Comm'n v. Mineta*, 246 F.Supp.2d 1163, 1165–66 (D.N.M. 2002) (citing *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994)), *aff'd on different grounds*, 373 F.3d 1078 (10th Cir. 2004). "To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). A preliminary injunction is an extraordinary remedy and should not be granted unless the movant carries the burden of showing a right to relief that is clear and unequivocal. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quotation omitted); *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).

### B.  Analysis

In their Second Motion for TRO, Plaintiffs ask the Court to halt state court foreclosure proceedings on the ground that Defendants are "attempting to foreclose on [their] home in bad faith and under color of law, despite this matter being in active federal litigation." Dkt. No. 41 at 1. It seems Plaintiffs are operating with the understanding that the federal court has become the court in which issues related to the foreclosure of their home will be resolved. *See also* Dkt. No. 77 at 3. But Plaintiffs misunderstand the effect of their initiation of the instant lawsuit.

When they filed their complaint in federal court, Plaintiffs commenced a *new* legal action independent of the foreclosure proceeding that remained ongoing in state court. Because the claims in Plaintiffs initial Complaint appeared to only seek relief from the state foreclosure judgment, this

Court cautioned them that it may lack federal jurisdiction over those claims. *See* Dkt. No. 7. Thereafter, Plaintiffs amended their complaint to include statutory and state law claims that appear separate and distinct from those at issue in the state foreclosure proceedings. And for the reasons explained above, the Court now recommends that the presiding judge determine that certain of those new claims (*i.e.*, Counts III, IV, and VI) survive the jurisdictional challenge Defendants mounted in their Motion to Dismiss. *See, supra*, Part III.B. Notwithstanding the survival of these claims, the Court still lacks jurisdiction to award equitable relief that would interfere with the state court foreclosure proceedings. *See William*s, 681 F. App'x at 696 (explaining that *Rooker-Feldman* bars claims that "seek[] review and rejection of the state court's foreclosure judgment"); *Amanatullah*, 187 F.3d at 1163 (observing that the *Younger* abstention doctrine prohibits federal courts from interfering with ongoing state court proceedings by granting equitable relief, such as injunctions of important state proceedings when such relief could adequately be sought in state court). Simply put, Plaintiffs' Motion for TRO, in which they ask the Court to enjoin state foreclosure proceedings, is incompatible with both the *Rooker-Feldman* and *Younger* doctrines, and the Court therefore **RECOMMENDS** that their Second Motion for TRO be **DENIED**.[9]

## V.  DEFENDANTS' MOTION FOR SANCTIONS

In their Motion for Sanctions, Defendants ask the Court to impose sanctions in the form of filing restrictions and/or monetary penalties against Plaintiffs for what they describe as the filing "on a nearly-weekly basis . . . [of] pleadings, motions, and other papers with this Court that blatantly violate the Rules of Civil Procedure." Dkt. No. 53 at 2. As the Court indicated at the

---

[9] Even if the Court were to consider the merits of Plaintiff's Motion for TRO, Plaintiffs fails to make any attempt to identify or establish the criteria necessary to obtain a temporary or preliminary injunction, let alone present evidence to establish the requisite criteria. Plaintiffs' Motion does not even clearly tie the claims in their First Amended Complaint to any grounds for a TRO. Given that a preliminary injunction is "an extraordinary remedy" for which the "right to relief must be clear and unequivocal[,]" *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255–56 (10th Cir. 2003), Plaintiffs Motion falls fall short of satisfying their burden to demonstrate entitlement to relief.

Omnibus Motions Hearing, it declines to recommend the imposition of sanctions against Plaintiffs

at this juncture.

### A.  Legal Standard

Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Failure to comply with the requirements of Rule 11 may subject a party to

sanctions, including monetary penalties and nonmonetary directives. *See* Fed. R. Civ. P. 11(c).

### B.  Analysis

Defendants contend that Rule 11 Sanctions should be imposed against Plaintiffs on account

of their violations of procedural rules and frivolous filings, among which they count Plaintiffs'

Motion to Disqualify Attorney Luke Ragsdale (Dkt. No. 17), July 17, 2025 Motion for Summary

Judgment (Dkt. No. 18), August 4, 2025 Motion to Strike Affirmative Defenses (Dkt. No. 27),

August 11, 2025 Motion in Limine (Dkt. No. 28), August 11, 2025 Motion for Judicial Notice

(Dkt. No. 29), Second Amended Complaint (Dkt. No. 37), "Final" Motion for Summary Judgment

(Dkt. No. 38), Emergency Motion for TRO (Dkt. Nos. 41, 42), and Amended Motion for Summary Judgment (Dkt. No. 43). According to Defendants, Plaintiffs have failed "to ascertain the relevant legal landscape" related to these filings and have instead put forth "arguments that blatantly contradict existing law." Dkt. No. 53 at 2. Relatedly, Defendants contend that Plaintiffs' filings lack any indicia of "reasonably inquiry into the legitimacy of the claims therein." *Id*. at 3. As to the Plaintiffs' amendment of certain pleadings and motions, Defendants argue that Plaintiffs have made only "minor changes" to those filings and that the amendments are "equally devoid of any reasonably inquiry into the law or facts, but [have] require[d] Defendants and the Court to expend additional time and resources to review and respond" to them. *Id*. Defendants did not append to their Motion any evidence demonstrating compliance with Rule 11(c)(2)'s safe harbor provision, which requires the movant to serve the motion on the party against whom they seek sanctions and to wait 21 days before filing the motion. *See* Dkt. No. 53; Fed. R. Civ. P. 11(c)(2). At the Omnibus Motions Hearing, however, Defense counsel published to the Court via Zoom's screensharing capability a September 29, 2025 letter in which Defendants advised Plaintiffs that they intended to move for sanctions on the ground that Plaintiffs had filed baseless motions. *See* Dkt. No. 77 at 6. Counsel for Defendants also represented that, as of the hearing, Defendants had expended $17,222 in attorneys' fees defending Plaintiffs' action. *Id*.

Although Plaintiffs have now voluntarily withdrawn four of these allegedly offending motions (*see* Dkt. No. 78), counsel for Defendants continue to press for sanctions, noting that the withdrawal of motions came only *after* Defense counsel had already drafted responses and prepared to argue in opposition to those motions at the Omnibus Motions Hearing (*see* Dkt. No. 77 at 3, 6). For their part, Plaintiffs have been unable to identify by document number or name any response in opposition to Defendants' Motion for Sanctions. *Id*. at 6. The Court warned

Plaintiffs that by failing to file a response in opposition to a motion, they risked that failure being construed as consent to grant the motion pursuant to the District's Local Rule 7.1(b). *See id*. at 5.

Nevertheless, as the Court observed at the Omnibus Motions Hearing, Plaintiffs' failures to comply with the applicable procedural rules appear to be inadvertent. *See id*. at 6. The Court cautioned them that, despite proceeding *pro se* and without formal legal training, they are nevertheless charged with adhering to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the District's Local Rules of Civil Procedure. *Id*. at 2. The Court further warned Plaintiffs that their failure to familiarize themselves with and to comply with the aforementioned rules could result in the imposition of sanctions against them, to include dismissal of their claims or an order that they pay opposing counsel's attorneys' fees. *Id*. at 2, 6. Under the circumstances, and given Plaintiffs' withdrawal of many of the filings about which Defendants complain, the Court is satisfied that this admonition, in lieu of the imposition of the sanctions requested by Defendants, is all that is warranted. In light of the warnings the Court issued at the Omnibus Motions Hearing, Plaintiffs are on notice that any future violations of the applicable rules may be met with the imposition of sanctions. *See id.* at 6.  But as to Defendants' Motion for Sanctions, the Court **RECOMMENDS** that it be **DENIED**.

## VI.     CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that:

1.  Plaintiffs' Motion for Leave to File First Amended Complaint and Counterclaim (Dkt. No. 19) be **GRANTED**;

2.  Defendants' Motion to Strike Plaintiffs' Second Amended Complaint (Dkt. No. 40) be **GRANTED IN PART** to the extent Defendants request that Plaintiffs'

Second Amended Compliant be **STRICKEN** and **DENIED IN PART** to the extent Defendants seek an award of attorneys' fees;

3. Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 39) be **GRANTED IN PART** to the extent Defendants seek dismissal of Plaintiffs' claims for Quiet Title (Count I), Declaratory Judgment (Count II), rescission under TILA (Count III, in part), violations of FDCPA (Count V), and Unjust Enrichment (Count VII) and **DENIED IN PART** to the extent Defendants seek dismissal of Plaintiffs' claims for statutory damages under TILA (Count III, in part), statutory damages under RESPA (Count IV), and as to Plaintiffs' claims for fraud and misrepresentation (Count VI);

4. Counts I, II, V, VII, and the portion of Count III seeking rescission under TILA be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction;

5. Plaintiffs' Second Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 39) be **DENIED**;

6. Defendants' Motion for Sanctions (Dkt. No. 53) be **DENIED**;

7. The litigation hold that precludes the filing of additional motions and stays briefing on pending motions (Dkt. No. 76) be **LIFTED**, with the admonition that forthcoming filings that fail to comply with Rule 11 or other applicable rules of civil procedure may result in the imposition of sanctions.

**SO RECOMMENDED.**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE